THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS HILL, an individual,

                    Plaintiff,

    v.

BUILDER SERVICES GROUP, INC., a foreign corporation, BRIAN BUNCH and JANE DOE BUNCH and the marital community comprised thereof,

                    Defendants.

CASE NO. C20-1478-JCC

ORDER

      This matter comes before the Court on Plaintiff Thomas Hill's motion to sever and remand his state law claim (Dkt. No. 8), Defendant Builder Services Group, Inc.'s motion to compel arbitration (Dkt. No. 14), Defendants' motion to disqualify Plaintiff's counsel (Dkt. No. 29), and Plaintiff's motion to seal (Dkt. No. 37). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to sever and remand (Dkt. No. 8), GRANTS in part the motion to compel arbitration (Dkt. No. 14), DENIES the motion to disqualify (Dkt. No. 29), and GRANTS the motion to seal (Dkt. No. 37) for the reasons explained herein.

## I.    BACKGROUND

      Plaintiff Thomas Hill filed suit in King County Superior Court against his former

1  employer, Builder Services Group, Inc. ("BSG"), and his former supervisor at BSG, Brian

2  Bunch, for violations of the Washington Law Against Discrimination ("WLAD"). (*See generally*

3  Dkt. No. 1-1.) Mr. Hill alleges that Defendants terminated his employment while he was on

4  leave for inpatient treatment for an addiction issue, and that his firing amounts to both disparate

5  treatment based on his medical disability and a failure to grant him a reasonable accommodation.

6  (*Id.* at 4.) After Mr. Hill amended his complaint to add a claim against BSG under the Employee

7  Retirement Income Security Act, 29 U.S.C. § 1132, for failing to provide notice of Mr. Hill's

8  Consolidated Omnibus Budget Reconciliation Act ("COBRA") continuation of health coverage

9  rights, (*id.* at 5), Defendants removed the action to this Court, (Dkt. No. 1).

## II.     DISCUSSION

### A.     Plaintiff's Motion to Sever and Remand

12         Mr. Hill moves to sever his state WLAD claim from his federal COBRA claim, and to

13  remand the WLAD claim to state court. (*See generally* Dkt. No. 8.) He argues that the Court

14  lacks supplemental jurisdiction over his WLAD claim, and that even if the Court has

15  supplemental jurisdiction, it should decline to exercise it. (*Id.* at 9–13.)

16         When the Court has original jurisdiction over a civil action, it may exercise supplemental

17  jurisdiction over state law claims that "are so related to claims in the action within such original

18  jurisdiction that they form part of the same case or controversy under Article III of the United

19  States Constitution." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or

20  controversy when it shares a 'common nucleus of operative fact' with the federal claims and the

21  state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d

22  969, 978 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust*

23  *v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003); *United Mine*

24  *Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

25         Mr. Hill's COBRA and WLAD claims do not share a common nucleus of operative facts.

26  Mr. Hill's failure to accommodate claim under WLAD will involve determining whether Mr.

Hill suffered from a disability, was qualified for the job in question, and gave notice of his

disability to BSG, and whether BSG failed to reasonably accommodate his disability. *See*

*LaRose v. King Cnty.*, 437 P.3d 701, 721 (Wash. App. 2019). Mr. Hill's WLAD disparate

treatment claim will involve also determining whether Mr. Hill was doing satisfactory work and

whether his disability was a substantial motivating factor for his termination. *See Marin v. King*

*Cnty.*, 378 P.3d 203, 212 (Wash. Ct. App. 2016). The facts and evidence relevant to these issues

have little, if any, overlap with the facts and evidence bearing on Mr. Hill's COBRA claim,

which will involve determining whether he received notice of his right to continue his health

coverage after he was terminated. *See Sheffield v. Goodyear Tire & Rubber Co.*, 2007 WL

3348428, slip op. at 3 (W.D. Wash. 2007). In the absence of evidentiary overlap between the

claims, the mere fact that both claims are related to the employment relationship is not enough to

establish supplemental jurisdiction. *See Llanes v. Zalewski*, 2019 WL 1509992, slip op. at 2 (D.

Or. 2019) ("[C]ourts in the Ninth Circuit generally find that they lack supplemental jurisdiction

over counterclaims where the only shared fact with the plaintiff's [federal] claim is the

employment relationship.").

BSG argues there will be some evidentiary overlap because Mr. Hill is seeking to recover

medical expenses that he incurred for his drug treatment as damages for the alleged COBRA

violation. (Dkt. No. 16 at 9.) But the question of whether Mr. Hill's treatment would have been

covered by insurance (such that his expenses for it could be recoverable as damages for a

COBRA violation) is wholly distinct from the question of whether his opiate addiction amounted

to a disability under WLAD and whether time off for treatment was a reasonable

accommodation. Any overlap between the evidence relevant to each question is likely to be

minimal and is not sufficient to form a "common nucleus of operative facts."

Accordingly, the Court GRANTS Mr. Hill's motion to sever and remand his WLAD

1    claim to King County Superior Court (Dkt. No. 8).[1]

2        **B.    Defendant's Motion to Compel Arbitration**

3        BSG moves to compel arbitration of Mr. Hill's claims. (Dkt. No. 14.) Because the Court

4    severs and remands Mr. Hill's WLAD claim, BSG's motion is moot in part, and the Court will

5    consider only whether to compel arbitration of Mr. Hill's COBRA claim.

6        BSG argues that Mr. Hill's claim is subject to the company's Dispute Resolution Policy,

7    which requires arbitration of "any claim under applicable state or federal common or statutory

8    law an employee might have against the Company including, for example, all claims for: . . . all

9    forms of unlawful discrimination" and "any claim an employee might have against any officer,

10   director, employee, or agent of the Company . . . if that claim in any way arises out of or relates

11   to . . . the employment relationship, or the termination of the employment relationship." (Dkt.

12   No. 15-2 at 2.) During his job training, Mr. Hill electronically signed an Acknowledgement Form

13   incorporating the Dispute Resolution Policy. (Dkt. No. 27 at 2; Dkt. No. 15-3 at 2.) The

14   Acknowledgement Form lists several company policies by name, including the Dispute

15   Resolution Policy, and contains a hyperlink to each one. (Dkt. No. 15-3 at 2.) The

16   Acknowledgement Form provides that Mr. Hill "acknowledge[s] that [he] ha[s] reviewed a

17   copy" of each of the listed policies and "understand[s] that is it [his] responsibility to review,

18   become familiar with, and comply with the policies and procedures by clicking on the links listed

19   above." (*Id.*) BSG argues that Mr. Hill's claim is subject to arbitration pursuant to the Dispute

20   Resolution Policy and that if there is any question about arbitrability, it must be decided by an

21

22   _____

     [1] The Court DENIES Mr. Hill's request for an award of costs and fees (Dkt. No. 8 at 13–14).
23   According to 28 U.S.C. § 1447(c), the Court may award "just costs and any actual expenses,
     including attorney fees" incurred due to removal. But "absent unusual circumstances, attorney's
24   fees should not be awarded when the removing party has an objectively reasonable basis for
     removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). BSG had an objectively
25   reasonable basis for removal because 28 U.S.C. § 1441(c) expressly allows defendants to remove
     a civil action that includes "a claim arising under [federal law] and . . . a claim not within the
26   original or supplemental jurisdiction of the district court."

ORDER
C20-1478-JCC
PAGE - 4

arbitrator because the Policy delegates gateway issues to arbitration. (Dkt. No. 14 at 4–8.)

The Federal Arbitration Act makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding a motion to compel arbitration, the Court generally must decide two gateway issues: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Parties may delegate these issues to an arbitrator if they clearly and unmistakably provide for it. *Id.* But even if a delegation provision is clear and unmistakable, it may be found unenforceable if the delegation provision *itself* is unconscionable. *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–74 (2010). Moreover, the Court retains the power to decide whether the parties mutually assented to a contract containing a delegation provision. *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (collecting cases from other circuits); *Cortez v. Nationstar Mortg. LLC*, 2020 WL 2303090, slip op. at 3 (C.D. Cal. 2020) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991)).

BSG contends that the parties clearly and unmistakably delegated gateway issues to an arbitrator because the Dispute Resolution Policy incorporates the Commercial Arbitration Rules of the American Arbitration Association, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, and validity of the arbitration agreement." (Dkt. No. 15-4 at 3.) Mr. Hill responds by challenging the formation of the entire contract and the enforceability of the delegation provision specifically. He argues that there was no mutual assent to the Dispute Resolution Policy (and the delegation provision contained therein) and that, even if there was, the delegation provision is unconscionable. (Dkt. No. 25 at 9–22.)

In Washington, for a contract to exist there must be mutual assent to its essential terms, including terms that are incorporated by reference. *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d

486, 491–492 (Wash. 2020). Mr. Hill argues that he did not manifest assent to the Dispute

Resolution Policy by signing the Acknowledgment Form. (Dkt. No. 25 at 11–12, 16.) His

argument relies on *Burnett v. Pagliacci Pizza, Inc.*, where the Washington Supreme Court held

that an employee did not manifest assent to a mandatory arbitration policy by signing an

Employee Relationship Agreement ("ERA") that incorporated the terms of an employee

handbook containing the mandatory arbitration policy. *Id.* at 489. The Court's decision turned on

the fact that the ERA failed to mention the arbitration policy at all, and the employee was not

given an opportunity to review the handbook before signing the ERA. *Id.* at 492–493. Instead, he

was expressly told to read the handbook later at home. *Id.* at 489. "Because Burnett lacked

knowledge of the incorporated terms, he never assented to the [mandatory arbitration policy]."

*Id.* at 492. In a similar case, the Ninth Circuit held that an employee's signing of an

"acknowledgment of receipt" of a revised employee handbook containing an arbitration clause

did not manifest assent to the arbitration agreement because nothing in the acknowledgment

notified him that the handbook contained an arbitration clause or that his acceptance of the

handbook constituted a waiver of his right to a judicial forum for certain claims. *Nelson v.

Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997).

  Mr. Hill contends that like the ERA in *Burnett*, the Acknowledgement Form he signed

"does not identify arbitration." (Dkt. No. 25 at 11.) But nothing in *Burnett* requires the use of the

word "arbitration" specifically. Rather, the *Burnett* court found a lack of assent because the ERA

referenced only the employee handbook and gave the employee no notice whatsoever of an

arbitration policy in the handbook, and even the handbook's table of contents did not list the

arbitration policy. To the contrary, the Acknowledgement Form here specifically called out the

Dispute Resolution Policy, provided a hyperlink to the Policy, and the Policy makes clear within

the first two paragraphs that it is an arbitration agreement. (Dkt. Nos. 15-2 at 2, 15-3 at 2.)[2]

---

[2] Mr. Hill also argues that "[m]utual assent does not lay when the employer reserves the ability to unilaterally change the terms of the contract." (Dkt. No. 25 at 12.) He argues that the provision in the Dispute Resolution Policy providing that "the Company reserves the right to change, modify,

1      Mr. Hill also argues that the delegation provision is procedurally unconscionable. (Dkt.

2 No. 25 at 17–19.) An agreement is procedurally unconscionable if, considering the

3 circumstances in which the parties made the agreement, one party lacked "a meaningful choice"

4 to enter the agreement. *Adler v. Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004). In

5 determining whether a party had a meaningful choice in entering a contract, the Court considers

6 the totality of the circumstances, including (1) the manner in which the parties entered into the

7 contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3)

8 whether the terms were hidden in a maze of fine print. *Torgerson v. One Lincoln Tower, LLC*,

9 210 P.3d 318, 322 (Wash. 2009).

10      Mr. Hill relies on his declaration, in which he states that he electronically signed the

11 Acknowledgement Form during his job training with Mr. Bunch. (*See generally* Dkt. No. 27.) He

12 asserts that Mr. Bunch directed him to use his computer to complete the Acknowledgement Form

13 and to hurry back so he could continue training. (*Id.* at 2.) Mr. Hill "do[es] not recall any actual

14 opportunity being provided to read the documents I was checking boxes for" and asserts that

15 "[Mr. Bunch] told me to go to the computer for a specific purpose, to complete the

16 acknowledgment form, and then come back for my job training." (*Id.*) Even assuming Mr. Hill's

17 assertions are true, they do not establish procedural unconscionability. Under Washington law,

18          [a]t minimum, an employee who asserts an arbitration agreement is procedurally
19          unconscionable must show some evidence that the employer refused to respond to

20 _____

21 or discontinue this policy at any time upon prior written notice to the Company's current
employees," (Dkt. No. 15-2 at 7), renders the contract illusory. But the modification clause does

22 not render the contract illusory because it specifically provides that the terms of the policy "in
effect at the time the facts giving rise to the dispute took place are the terms that will be binding

23 on the Company and the employee." (*Id.*) Moreover, unilateral modification clauses do not
render arbitration agreements substantively unconscionable because the implied covenant of

24 good faith and fair dealing limits a party's unilateral discretion to change a contract term. *See*
*Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (citing *Rekhter v. Dep't of*

25 *Soc. & Health Servs.*, 323 P.3d 1036 (Wash. 2014)).

26

her questions or concerns, placed undue pressure on her to sign the agreement
without providing her with a reasonable opportunity to consider its terms, and/or
that the terms of the agreement were set forth in such a way that an average person
could not understand them.

*Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 761 (Wash. 2004).

Mr. Hill does not meet this burden. He does not contend that the Dispute Resolution
Policy (or the delegation provision itself) was buried in fine print or written in a manner beyond
the comprehension of a layperson. In fact, the Dispute Resolution Policy was expressly called
out and linked in the Acknowledgement Form. While Mr. Hill contends that he was given little
time to review the Policy because he needed to get back to training, he "do[es] not contend that
[he] attempted to consider it, attempted to ask questions about it, or even that [he] would have
asked questions if [he] had more time." *Simpson v. Inter-Con Sec. Sys., Inc.*, 2013 WL 1966145,
slip op. at 3 (W.D. Wash. 2013) (finding no procedural unconscionability under Washington law
where Plaintiffs submitted declarations similar to Mr. Hill's); *see Hoober v. Movement Mortg.,
LLC*, 382 F. Supp. 3d 1148, 1155 (W.D. Wash. 2019) (finding no procedural unconscionability
where Plaintiff was told "it was urgent that [she] complete the paperwork as soon as possible" so
that she could attend a training, but did not contend that she "asked questions or asked for
additional time to consider the agreements or consult counsel"); *Signavong v. Volt Mgmt. Corp.*,
2007 WL 1813845, slip op. at 3 (W.D. Wash. 2007) (finding that Plaintiff's perception that her
employer hurried her signature, without more, is insufficient to invalidate the agreement on the
grounds of procedural unconscionability).[3]

Because the Court must enforce the delegation provision, the Court GRANTS the motion
to compel arbitration and STAYS the proceedings pending a determination on gateway issues by
the arbitrator or pending completion of the arbitration.[4]

---

[3] The Court also rejects Mr. Hill's argument that the delegation provision is substantively
unconscionable, (*see* Dkt. No. 25 at 19–22), because the provision is not one-sided.

[4] The Court does not consider the surreply (Dkt. No. 34) filed by Mr. Hill in connection with the
motion to compel because it does not contain a motion to strike. *See* W.D. Wash. Local Civ. R.
7(g)(2) (providing that a surreply "shall be strictly limited to addressing [a] request to strike" and
"[e]xtraneous argument or a surreply filed for any other reason will not be considered").

1

2

3   **C.     Defendants' Motion to Disqualify Plaintiff's Counsel**

As a final matter, Defendants move to disqualify Plaintiff's counsel, Dan Bridges,

because of alleged ethical violations stemming from a mass e-mail Mr. Bridges sent to over

1,000 current and former BSG employees. (Dkt. No. 29.) In the e-mail, Mr. Bridges introduced

himself as an attorney representing a former BSG employee in a discrimination and wrongful

termination lawsuit against the company. (Dkt. No. 20-1 at 2.) He asked recipients to help his

client by providing a copy of the employee handbook from 2020 and any material they received

during the onboarding process. (*Id.*) In the e-mail, Mr. Bridges explained to recipients that he

had made efforts to remove managers from the recipient list, was not asking any current

managers at the company to contact him, and was not asking employees to take or share any

material from the company that they were not authorized to have. (*Id.*)

Mr. Bridges obtained the list of e-mail addresses to which he sent his e-mail from Mr.

Hill—specifically, from an email Mr. Hill received about health insurance while he was

employed at BSG that had other employee recipients' e-mail addresses visible. (Dkt. No. 36 at

4.) Mr. Bridges screened the list of e-mail addresses in an effort not to contact Mr. Bunch or any

employees who might be speaking agents of the company. (*Id.* at 6–10.) Nevertheless, Brian

Bunch, a manager at BSG and a named defendant who is represented by Williams Kastner,

received Mr. Bridges' e-mail. (Dkt. No. 20-2.) According to a declaration from Mr. Bridges, he

did not receive any documents in response to his e-mail, and he only received about ten

responses, one from a manager and the rest from hourly laborer employees stating they did not

have any of their employment documents. (Dkt. No. 36 at 1.)

In determining whether an attorney has violated his ethical responsibilities, "the Court

first refers to the local rules regulating the conduct of members of its bar." *United States ex rel.*

*Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1560 (W.D. Wash. 1986).

Attorneys practicing in the Western District of Washington must abide by the Washington Rules

of Professional Conduct ("RPC"). W.D. Wash. Local Civ. R. 83.3(a)(2). Disqualification of an attorney for violating the RPCs is a drastic measure that should be imposed only when necessary. *In re Examination of Privilege Claims*, 2016 WL 11164791, slip op. at 4 (W.D. Wash. 2016), *report and recommendation adopted*, 2016 WL 8669870 (W.D. Wash. 2016).

Defendants argue that Mr. Bridges violated RPC 4.2 by communicating with a represented party, RPC 4.4 by intruding on the attorney-client privilege, and RPC 7.3 by soliciting company employees and managers. The Court finds no violation of RPCs 4.4 or 7.3 because Mr. Bridges' e-mail did not seek or obtain attorney-client privileged information or offer legal services to the recipients. Even if Mr. Bridges violated RPC 4.2 by inadvertently sending his e-mail to Mr. Bunch who is a represented party, disqualification is not necessary or warranted.[5] Mr. Bridges made reasonable efforts to screen his mailing list for Mr. Bunch, the contact was inadvertent, the e-mail specifically stated that current managers were not the intended recipients and should not respond, Mr. Bunch did not respond to the e-mail, and Mr. Bridges did not obtain any improper information or advantage as a result of having e-mailed Mr. Bunch. *See In re Disciplinary Proceeding Against Carmick*, 48 P.3d 311, 319 (Wash. 2002) (noting that the purpose of RPC 4.2 "is to prevent situations in which a represented party is taken advantage of by adverse counsel").[6]

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to sever and remand (Dkt. No.

---

[5] A "party" for purposes of RPC 4.2 is not limited to named defendants like Mr. Bunch but also includes any employee of a corporate defendant who has the legal authority to bind the corporation—in other words, any employee who is a "speaking agent." *Wright v. Group Health Hospital*, 691 P.2d 524, 570 (Wash. 1984). However, Defendants have not identified any speaking agents who received Mr. Bridges' e-mail.

[6] Mr. Hill moves to seal exhibits (Dkt. No. 38) filed with his response brief because they contain BSG employees' personal e-mail addresses. (Dkt. No. 37.) The Court finds that the interest in keeping this information private constitutes good cause to seal. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) ("In light of the weaker public interest in nondispositive materials, we apply the 'good cause' standard when parties wish to keep them under seal.").

8), GRANTS in part the motion to compel arbitration (Dkt. No. 14), DENIES the motion to

disqualify (Dkt. No. 29), and GRANTS the motion to seal (Dkt. No. 37). The Court further

ORDERS that Plaintiff's state law claim is SEVERED and REMANDED to King County

Superior Court, and this proceeding is STAYED pending arbitration of Plaintiff's federal claim.

The Clerk is DIRECTED to maintain Docket Number 38 under seal and to terminate Docket

Number 7 as moot. The parties are DIRECTED to issue a joint status report within ten days of

the completion of arbitration proceedings.

DATED this 3rd day of September 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE